NAPUCHE v. LIQUOR CONTROL COMMISSION.

1. CONSTITUTIONAL LAW—LIQUOR CONTROL COMMISSION—DELEGATION OF POWERS—BOARD OF HEARING EXAMINERS.

Statute creating an auxiliary ministerial board of hearing examiners that makes its findings of fact to the liquor control commission which has the right to accept or reject such findings and take further testimony and retains complete power to suspend or revoke liquor licenses did not constitute an unconstitutional delegation of powers conferred upon the liquor control commission (CL 1948, § 436.5a).

2. SAME—DUE PROCESS—NOTICE—HEARING—FAIR TRIAL.

Due process of law requires notice and opportunity to be heard and imports the right to a fair trial of the issues involved in the controversy and a determination of disputed questions of fact on the basis of evidence (US Const, am 14; Mich Const 1908, art 2, § 16).

3. OFFICERS—QUASI-JUDICIAL FUNCTIONS—HEARING—EVIDENCE.

An administrative agency in the performance of quasi-judicial functions which involve determinations upon evidence adduced at a hearing is required to hold a hearing in a substantial sense and the officer who makes the determinations must consider and appraise the evidence which justifies them.

REFERENCES FOR POINTS IN HEADNOTES

[1, 4–9] 30 Am Jur, Intoxicating Liquors §§ 145–149.
[1, 4–9] Revocation of license in exercise of police power. 124 ALR 541.
Hearsay in proceeding for suspension or revocation of liquor license. 142 ALR 1388.
Revocability of license for fraud or other misconduct before or at the time of its issuance. 165 ALR 1138.
[3–9] 42 Am Jur, Public Administrative Law § 134 et seq.
[3–9] Necessity of some evidence at hearing to support decision of public board or official required to be made after or upon hearing. 123 ALR 1349.
[6] 42 Am Jur, Public Administrative Law § 147 et seq.
[6] Necessity, form, and contents of express finding of fact to support administrative determinations. 146 ALR 209.

4. INTOXICATING LIQUORS — LICENSES — SUSPENSION — HEARING —
   EVIDENCE.

   One licensed to engage in the sale of intoxicating liquors whose
   license is sought to be suspended is entitled to (1) notice of the
   time and place of hearing, (2) a hearing before a properly
   authorized body, (3) a reasonably definite statement of the
   charge or charges against him, (4) the right to cross-examine
   adverse witnesses, (5) the right to produce witnesses in his
   own behalf, and (6) a full consideration and a fair determina-
   tion according to the evidence of the controversy by the body
   before whom the hearing is had.

5. SAME—SUSPENSION OF LICENSES—EVIDENCE.

   License of liquor control commission licensee was not illegally
   suspended by reason of lack of evidence before commission,.
   where transcript of testimony taken before the hearing exam-
   iner was in the possession of the commission's attorney and
   excerpts therefrom read at the hearing before the commission
   and the licensee substantially admitted that there had been the
   violation of the law by reason of sale of intoxicating liquor
   to minors upon which the sought-for suspension was based (CL
   1948, § 436.1 *et seq.*).

6. SAME—FINDINGS OF HEARING EXAMINER.

   So-called "findings" by a hearing examiner for the liquor control
   commission, shown by the record to be a summarization and
   condensation of the record and testimony taken before him,
   *held,* supported by the record, to constitute a summary of the
   testimony and not a determination of facts (CL 1948,.
   § 436.5a).

7. SAME—SUSPENSION OF LICENSE—HEARING EXAMINER.

   Licensee of the liquor control commission *held,* to have been given
   a full and fair hearing, as required by the Constitution, rela-
   tive to claimed violation of liquor law before suspension of his
   license by the commission, where testimony taken before hear-
   ing examiner was summarized by him and made available to the
   commission which held a hearing at which the licensee testified
   (Const 1908, art 2, § 16; CL 1948, § 436.5a).

8. SAME—SUSPENSION OF LICENSE—HEARING EXAMINER—HEARSAY—
   PREJUDICE.

   Fact that some inconsequential hearsay testimony was introduced
   at hearing on suspension of liquor license that was held before
   liquor control commission's hearing examiner *held,* not prejudi-
   cial in view of fact such hearsay was substantially confirmed
   by subsequent testimony of eyewitnesses and the licensee made

no objection to the presentation of such testimony although previously advised he might retain counsel at such hearing (CL 1948, § 436.5a).

9. SAME—SUSPENSION OF LICENSE—EXHIBITS—WITNESSES—RECORD. Failure to read certain exhibits into the record and to call all witnesses to liquor law violation upon which was based the suspension of liquor license *held,* not reversible error, where the licensee did not request that the instruments be made a part of the record nor ask that certain persons present at the time of the violation be called as witnesses (CL 1948, § 436.5a).

Appeal from Wayne; Murphy (George B.), J. Submitted October 17, 1952. (Docket No. 59, Calendar No. 45,544.) Decided April 13, 1953. Rehearing denied June 8, 1953.

Certiorari by Christo P. Napuche, doing business as Bronx Cafe, against Liquor Control Commission of the State of Michigan to review suspension of license. Decision reversed. Defendant appeals. Reversed and decision of defendant reinstated.

*Bland A. Pugh,* for plaintiff.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Daniel J. O'Hara* and *Franklin J. Rauner,* Assistants Attorney General, for defendant.

ADAMS, J. In 1950 Christo P. Napuche, plaintiff and appellee, was the holder of a class "C" license and a specially designated merchant's license issued by the Michigan liquor control commission. Under those licenses he operated a place of business known as the Bronx Cafe in the city of Detroit.

On July 17, 1950, 2 Detroit police officers on routine inspection entered his place of business and there observed 2 minors consuming beer. They checked the identification of the minors to determine their age and spoke to the bartender. In due course their ob-

servations were reported to the Michigan liquor control commission and a formal complaint was made against Napuche charging a violation of the rules and regulations of the commission. A copy of the complaint was served on Napuche, hearing was noticed, witnesses subpoenaed, and a hearing held before a hearing examiner on September 6, 1950, pursuant to the provisions of section 5a of the Michigan liquor control act, as added by PA 1945, No 133 (CL 1948, § 436.5a [Stat Ann 1949 Cum Supp § 18.975 (1)]). Neither Napuche nor the commission had legal counsel at the hearing, although a sergeant of the Detroit police department questioned the witnesses in behalf of the commission. Testimony was taken from witnesses subpoenaed by the commission and from those who appeared voluntarily in behalf of Napuche. Full opportunity was given to cross-examine and to make arguments to the examiner.

Following the hearing, the examiner dictated his findings which were then forwarded to the commission. On October 24, 1950, the commission entered an order finding that Napuche had violated the rules and regulations of the commission in selling alcoholic beverages to minors and in permitting minors to consume alcoholic beverages on the premises. His licenses were ordered suspended for 15 days and he was fined $150 with an additional suspension of 30 days if the fine was not paid.

On November 20th, Napuche, through an attorney, claimed an appeal to the full commission in accordance with the statute. The appeal was heard by 2 commissioners on January 4, 1951, and at that hearing both the commission and Napuche were represented by legal counsel. During the course of the hearing Napuche was sworn and testified at some length in reference to problems peculiar to the operation of his establishment due to its location in a fac-

tory area. Upon the conclusion of the hearing the commission's decision of October 24th was affirmed. Napuche then petitioned the circuit court in Wayne county for a review of the commission's decision in the nature of a writ of certiorari. After a review of the record, the circuit judge ruled that Napuche had been denied his guaranteed constitutional rights "in that the commission that made the findings did not hear the evidence" and reversed the commission's decision. From that decision the Michigan liquor control commission takes this appeal.

Statutory authority for the creation of a board of hearing examiners and the powers and duties of the members is found in section 5a of the Michigan liquor control act, being PA 1933 (Ex Sess), No 8, as added by PA 1945, No 133 (CL 1948, § 436.5a [Stat Ann 1949 Cum Supp § 18.975(1)]). This section was considered by the Court in *Case* v. *Liquor Control Commission,* 314 Mich 632. It was there claimed that the legislature in enacting the section had improperly delegated the powers of the commission as established by Constitution (1908), art 16, § 11, as amended in 1932. We held, however, that the board of hearing examiners was merely a fact-finding board which made its findings to the commission; that the commission had the right to accept or refuse such findings and retained complete power to suspend and revoke liquor licenses. The Court concluded, therefore, that the provisions of section 5a were not in violation of the Constitution.

We are here presented, however, with a different problem; that is, whether or not in the administration of the provisions of section 5a Napuche, a licensee of the commission, was deprived of his right to a fair and full hearing on a complaint charging a violation of the rules and regulations of the commission. Specifically, it is the claim of the appellee, as

sustained by the trial court, that the liquor control commission, a constitutional body given exclusive power to suspend liquor licenses, did not consider and appraise all of the evidence in this cause before its decision was made. It is contended that as a result of such failure, appellee's rights have been taken without due process of the law.

"Due process of law requires notice and opportunity to be heard. It imports the right to a fair trial of the issues involved in the controversy and a determination of disputed questions of fact on the basis of evidence."* *Dation* v. *Ford Motor Co.,* 314 Mich 152, 167 (19 NCCA NS 158).

" 'But there must be a hearing in a substantial sense. And to give the substance of a hearing, which is for the purpose of making determinations upon evidence, the officer who makes the determinations must consider and appraise the evidence which justifies them.' * * *

"The maintenance of proper standards on the part of administrative agencies in the performance of their quasi-judicial functions is of the highest importance and in no way cripples or embarrasses the exercise of their appropriate authority. On the contrary, it is in their manifest interest. For, as we said at the outset, if these multiplying agencies deemed to be necessary in our complex society are to serve the purposes for which they are created and endowed with vast powers, they must accredit themselves by acting in accordance with the cherished judicial tradition embodying the basic concepts of fair play." *Morgan* v. *United States,* 304 US 1, 22 (58 S Ct 773, 82 L ed 1129).

"Unless the right is waived, the person charged is at least entitled to:
"(1) Notice of a time and place of hearing.
"(2) A hearing before a properly authorized body.

---

* US Const, am 14; Mich Const 1908, art 2, § 16.—REPORTER.

"(3) A reasonably definite statement of the charge or charges preferred against the accused. : · ·

. "(4) The right to cross-examine the witnesses who testify against him.

"(5) The right to produce witnesses in his own behalf.

"(6) A full consideration and a fair determination according to the evidence of the controversy by the body before whom the hearing is had." *Hanson* v. *State Board of Registration in Medicine*, 253 Mich 601, 607. ·· . ·;

Turning to the record, it appears that adequate notice of both the hearing before the hearing examiner and before the full commission was given; that both hearings were before bodies authorized by either statute or Constitution to hear such matters; that a concise and definite statement of the charge against the licensee was served upon him prior to the hearing, and that he was offered the privilege and did cross-examine witnesses who testified against him and likewise produced witnesses in his own behalf.

It is contended, however, by Napuche, that the transcript of the testimony taken before the hearing examiner was not available for examination by the commissioners before their final decision. This claim is predicated upon the date of certification of the transcript shown by the record to be March 19, 1951. ·· ·· · · · · ·· ·' ! ·;\· · ·

We cannot agree with this contention because a more careful examination of the record shows that a transcript was in the possession of counsel for the commission at the time of the appeal hearing before the full commission. During the hearing, reference was made to specific pages of the transcript then in the hands of counsel for the commission and excerpts were read therefrom. If counsel for the commission had the record before him for examination at the hearing, then it follows that the commis-

sioners likewise had it available for their examination.

It is significant, too, that during the appeal hearing, counsel for the licensee substantially admitted the violation when he said to the commission:

"It occurs to me, after talking with this man, and after making some investigation, that the circumstances under which this violation occurred are such that they might appeal to the commissioners at this hearing."

Following counsel's statement to the commission, Mr. Napuche discussed with the members of the commission some of the circumstances surrounding the violation and his problems in attempting to comply with commission regulations. In that conversation the following questions and answers appear.

"*Mr. Kozaren:* Were the minors apprehended on the licensed premises?
"*Mr. Napuche:* Yes. * * *
"*Mr. Kozaren:* By the police department? * * *
"*Mr. Napuche:* Yes."

Further examination of the record shows that the hearing examiner summarized the record and the testimony taken before him in what were entitled "findings." Careful comparison of these so-called "findings" with the testimony presented at the hearing indicates that they are a reasonably accurate condensed report of the pertinent evidence presented by both sides at the hearing. The findings are a summary of the testimony, not a determination of facts. That determination was left to the commission and it found that there had been a violation. Our examination of the record convinces us that appellee was given a full opportunity to be heard and that all of the testimony taken both before the hearing examiner and before the commission was examined and

appraised by the commission before a determination was made. Appellee was given a fair hearing, as required by the Constitution.

It was further contended that the commission was not represented by legal counsel at the hearing before the hearing examiner and that as a result errors occurred in the admission of testimony. Appellee, when notified of the hearing, was advised that he might retain counsel in his behalf but decided against such action. The record shows that while he personally appeared at the hearing, he made no objection to testimony offered. Minor portions of the admitted testimony were of a hearsay nature, but those facts stated by way of hearsay were all substantially confirmed by the subsequent testimony of eyewitnesses and appellee's rights were in no way prejudiced by the admission of inconsequential hearsay testimony.

Failure to read certain exhibits into the record and to call all witnesses to the violation are of little consequence. Appellee did not request the instruments be made a part of the record nor did he ask that certain persons who were present at the time of the violation be called as witnesses. He had been advised that he would be given the opportunity to have witnesses testify in his behalf and subpoenas would have been issued had he made a request.

We are of the opinion that the 2 hearings were fairly conducted, that the commission had before it a transcript of the testimony taken before the hearing examiner when their final determination was made, and that the decision of the commission was based upon a full consideration and appraisal of all the evidence.

The decision of the circuit judge is reversed and set aside and the decision of the Michigan liquor con-

trol commission reinstated and affirmed.   Costs to appellant.

DETHMERS, C. J., and BUTZEL, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.