ROBSON *v.* GRAND TRUNK WESTERN RAILROAD COMPANY.

1. JURY—COMPOSITION—SYSTEMATIC EXCLUSION.
   Jury need not contain representatives of all the economic, social, religious, racial, political, and geographical groups of the community, but prospective jurors should be selected without systematic and intentional exclusion of any of these groups.

2. SAME—LIST OF PROSPECTIVE JURORS—SELECTION.
   Selection of a jury list with reference to sex, employment, or age does violence to the fundamental precept of the jury system that juries should be chosen from a fair cross section of the community.

3. SAME—COMPOSITION—EXCLUSION OF PERSONS.
   A jury array of qualified persons from which young people and employed people have been excluded is not the kind of jury contemplated by statutes (CLS 1961, § 600.1201 *et seq.*, as amended by PA 1963, No 225).

REFERENCES FOR POINTS IN HEADNOTES
[1-4]  31 Am Jur, Jury § 93 *et seq.*
[5]  31 Am Jur, Jury §§ 116, 117.
[6]  5 Am Jur 2d, Appeal and Error § 762 *et seq.*
[7]  5 Am Jur 2d, Appeal and Error § 1009.

4. Same—Exclusion.

Blanket exclusion of wage earners, young or old, from jury array is one of those tendencies which weaken the institution of jury trial.

5. Same—Selection of List—Burden of Proof.

Burden to prove that officials of political subdivisions of county did not comply with statutory provisions requiring selection of jury list at random from persons eligible, *held,* sustained by plaintiff, where proofs showed that a number of persons served on juries repeatedly although the odds against such an occurrence are very great, that persons requesting jury duty were included in lists in violation of statute, and that younger eligible employed men and women were excluded from list (CLS 1961, § 600.1201 *et seq.,* as amended by PA 1963, No 225).

6. Appeal and Error—Moot Question—Continuing Improprieties.

Question of whether jury array was improperly selected, *held,* not rendered moot by expiration of term of challenged jury, where it was apparent that errors in jury selection complained of had occurred in prior jury selections and might continue in the future, the question being important not only to the parties, but to all citizens (CLS 1961, § 600.1201 *et seq.,* as amended by PA 1963, No 225).

7. Costs—Public Question—Selection of Jury Panel.

No costs are allowed on appeal in personal injury action under the Federal employers' liability act, where question presented on appeal, whether jury array had been properly selected, was a public question (CLS 1961, § 600.1201 *et seq.,* as amended by PA 1963, No 225).

Appeal from St. Clair; Streeter (Halford I.), J. Submitted Division 2 May 11, 1966, at Lansing. (Docket No. 597.)   Decided November 9, 1966.

Complaint by John A. Robson against Grand Trunk Western Railroad Company, a Michigan corporation, under the Federal employers' liability act for personal injuries allegedly sustained while in the employ of the railroad.   Motion by plaintiff to strike jury array.   Motion denied.   Plaintiff appeals. Reversed and remanded with instructions.

*Peter E. Bradt,* for plaintiff.

*Robert L. Livesay* and *Walsh, O'Sullivan, Stommel & Sharp,* for defendant.

McGregor, P. J.   This is an appeal from a denial of a motion to strike the jury array, challenging the method used in the selection of a jury list at random, as required by law.   Const 1963, art 1, § 14 (CLS 1961, §§ 600.1201, 600.1203, 600.1218, and § 600.1202, as amended by PA 1963, No 225 [Stat Ann 1962 Rev §§ 27A.1201, 27A.1203, 27A.1218, and Stat Ann 1965 Cum Supp § 27A.1202]).   The case is a FELA (Federal employers' liability act)[1] suit commenced by a former railroad employee for damages sustained from an on-the-job injury, there being no workmen's compensation available.   After the question was at issue and scheduled for trial, plaintiff filed a motion challenging the then present jury array (44 in number) as not properly selected, in accordance with the statute applicable thereto, and sought from the trial court an order providing that the pending case might be tried before a jury properly selected at random, as provided by and having the qualifications specified in chapter 12 of the RJA (CLS 1961, § 600.1202, as amended by PA 1963, No 225; §§ 600.1203, 600.2128 [Stat Ann 1965 Cum Supp § 27A.1202; Stat Ann 1962 Rev §§ 27A.1203, 27A.2128]).   The verified motion stated that the current jury array was not so selected.   The motion was based primarily upon the jurors' executed questionnaires for the current jury array on file with the court and the affidavit of plaintiff's attorney.   Such affidavit stated that one juror was over the age of 70 years;[2] that, according to the executed jury questionnaires, ap-

---

[1] 45 USCA § 51 *et seq.*
[2] CLS 1961, § 600.1218 (Stat Ann 1962 Rev § 27A.1218) exempts from jury service "all persons more than 70 years of age".

proximately 1/4 of the jury array were repeaters who came from governmental units with such large population as to make it virtually impossible that such repetition should occur by chance. The affidavit also stated that from the entire array approximately 14 were men, of whom no more than 6 were employed; further, that of the remaining 25 who were women, no more than 4 were employed outside the home; and that the jury array did not represent a fair cross-section of the county and indicated on its face that it was not chosen at random. The affidavit further stated the population of the county, according to the 1960 United States census was 107,201 and referred to the 1960 population of the various units required to return jurors. This motion was heard by the trial court on February 18, 1965, at which hearing there were introduced plaintiff's exhibit #1, the 42 jurors' executed questionnaires; plaintiff's exhibit #2, the 1960 United States census figures for St. Clair county and each township, city, and village therein. At this hearing the court's attention was drawn to the fact that the questionnaires showed that one juror was over age; that the array consisted of 20 housewives out of the 26 women on the jury array, with only 4 of the 26 employed outside the home; that approximately 75% of the jury array were unemployed, being either housewives or retired people; that the jury array included no one under 30 years of age and a majority well over that age. The court's attention was also directed to the fact that the jury array was made up mostly of elderly retired people and housewives, and also that it contained approximately 25% repeaters (example: one juryman from Clay township was drawn in 1962 and again in 1964;[3] a jurywoman from

---

[3] 1960 population of Clay township: 6,948—59.1% are 21 years of age or older. United States Department of Commerce Bureau of Census, 1960 Michigan report, pp 24–159, and July 1, 1964 bulletin.

Port Huron township[4] was drawn in 1962, 1963 and 1964), all of which the affiant alleges clearly demonstrates that the array was not selected *at random,* in accordance with the statutes.

The defendant did not dispute plaintiff's right to trial by a jury selected in accordance with the Constitution and the law. Attorney for the defense filed no counter-affidavit nor offered any testimony in opposition thereto, but contended at the hearing that the burden was on the moving party to show that the jury array was not selected in accordance with the law, and that he had not sustained the burden of proof in this regard.

At the hearing, the county clerk testified that he did not know how it happened that there were so many repeaters serving on the jury array and that mere chance would not result in 25% repeaters. Another of the witnesses for the plaintiff was the deputy county clerk who testified that when people telephoned the clerk's office and asked to serve on juries, "we always advise them to contact their supervisor in their precinct or township, and turn their name in to him."

On February 22, 1965, plaintiff filed a verified supplemental motion further attacking the jury selection methods, stating that in some townships the township clerk did not participate with the supervisor in the selection of jurors, as required by statute (CLS 1961, § 600.1201 [Stat Ann 1962 Rev § 27A.1201]) and that in other units the jurors were not selected at random, and that in some units of the county, the jury list did not contain the number of names required by statute (CLS 1961, § 600.1203 [Stat Ann 1962 Rev § 27A.1203]). The verified supplemental motion requested that the court take the testimony of the officers required by law to

4 1960 population of Port Huron township: 7,047.

return their respective jury lists to the county clerk. This supplemental motion came on to be heard on March 1, 1965. At this hearing, plaintiff offered to prove the sworn allegations in both motions. Defendant filed no affidavits nor presented any testimony in opposition to either motion. Plaintiff's offer of proof was denied and both motions were denied. The trial court commented at the first hearing:

"*The Court:* Well, I do not like to go through a long trial and then have this question passed on afterward. If you can take it up at this time I will certify it as a question of importance that should be decided before the trial and then perhaps we can get some word from the Court on it, so if you wish to follow that procedure that is all right."

Then the record shows that in an exchange of viewpoints, the trial court indicated to plaintiff's attorney that he believed that the trial court could certify the question to the Court of Appeals, indicating that he thought there was such a procedure, and later, the trial court said:

"I would be interested in any order that would be helpful in selecting arrays of jurors."

and subsequently said to the attorney for the plaintiff:

"so, if you prepare an order to be sent to the supervisors I do not doubt but what it could reach them before the actual selection is made on the 1965 panel [array]. You better prepare one that you think will work and then if it does not, I do not know what else to do, except to get instructions from the high court as to how to operate if the administrative officers do not follow instructions."

The comment by the trial court evidenced his concern for the proper legal compliance by the respec-

tive township and city ward officials in the selection of persons for the jury lists.

The pertinent part of the statute (CLS 1961, § 600.1201 [Stat Ann 1962 Rev § 27A.1201]) provides:

"The supervisor and township clerk of each township and the supervisor or assessor and alderman of each ward or assessment district in any city, at the time appointed by law for the review of the assessment roll for each year, shall make a list of persons to serve as petit jurors."

CLS 1961 § 600.1202 (Stat Ann 1962 Rev § 27A-.1202), as amended by PA 1963, No 225, provides:

"The officers shall select *at random* from the persons assessed on the assessment roll or voters' registration lists of the township or ward for the same year, suitable persons having the qualifications of electors to serve as jurors. In making the selection, they shall take the names of only such as are not exempt from serving on juries, who are in possession of their natural faculties and not infirm or decrepit, of good character, of approved integrity, of sound judgment, well informed and conversant with the English language, free from all legal exceptions, and who have not made, and in whose behalf there has not been made, to the officers any application to be selected and returned as jurors." (Emphasis added.)

The attorney for the plaintiff, in the presentation of his argument, referred to the laws of probability, commonly used in the business world today[5] (as found in any standard work on mathematics) and demonstrated therefrom that, for one man, drawn for the jury list from a township with a population of 6,948, the law of probability would determine that

_____
[5] Vergera, Mathematics in Everyday Things, pp 185, 186, 266–268; Hogben, Mathematics for the Millions (3d ed), pp 609, 625, 633.

the likelihood of his being selected at random from those 21 years of age or over is approximately 1-to-4,105. These circumstances showed mathematically and logically that the jury array was not selected at random by the county's respective political subdivision officials charged therewith, but was a jury array largely composed of those who apparently had requested jury duty or were retired people and housewives.

It is essential to the proper disposition of jury matters that they be submitted to and determined by a jury drawn from an array of qualified jurors. This right of trial has been a part of jurisprudence from the beginning of Anglo-American jurisprudence. It is guaranteed in both the State and Federal Constitutions. "The right of trial by jury shall be preserved", United States Const, Am 7. "The right of trial by jury shall remain", Const 1963, art 1, § 14. An array of qualified persons from which young people and employed people have been excluded is not the kind of a jury contemplated by the statutes.

"The American tradition of trial by jury, considered in connection with either criminal or civil proceedings, necessarily contemplates an impartial jury drawn from a cross section of the community. [Authorities cited.] This does not mean, of course, that every jury must contain representatives of all the economic, social, religious, racial, political and geographical groups of the community; frequently such complete representation would be impossible. But it does mean that prospective jurors shall be selected by court officials without systematic and intentional exclusion of any of these groups. Recognition must be given to the fact that those eligible for jury service are to be found in every stratum of society. Jury competence is an individual rather than a group or class matter. That fact lies at the

very heart of the jury system. To disregard it is
to open the door to class distinctions and discrimina-
tions which are abhorrent to the democratic ideals of
trial by jury." *Thiel* v. *Southern P. Co.* (1945), 328
US 217, 220 (66 S Ct 984, 985, 90 L ed 1181, 1184,
166 ALR 1412).

The selection of a jurors list with reference to sex,
employment, or age does violence to the fundamental
precept of the jury system that juries should be
chosen from a fair cross section of the community.

"The ultimate object of the procedure in selecting
persons for jury service is to bring into court for the
benefit of litigants and for the administration of
justice jurors who have been chosen impersonally,
methodically, and by equal chance, with respect to
possibility of selection, from the whole body of the
county or other district from which they are prop-
erly selected." 31 Am Jur, Jury § 74, p 70.

The undisputed evidence submitted at the hear-
ings on the plaintiff's motions clearly showed that
the presiding judge of the court and the county
clerk had acted properly in convening the array and
had properly instructed the township and city ward
officials of the appropriate rules on how to select
the array. Therefore, the question before us is
whether or not the plaintiff sustained the burden of
demonstrating that the township and city ward offi-
cials did not comply with the applicable law in select-
ing at random a jury list from the persons assessed
on the assessment roll or the voters registration
list of the respective political subdivisions of the
county.

This Court determines from the submitted record
that the plaintiff did sustain his burden of proof
and did show that the officers of the respective
political subdivisions of the county did not comply
with the applicable statutes, and did not select a

jury list at random from the assessment roll or voters' registration lists of the respective political subdivisions.

"The constitutional right to trial by jury means a right to a fair and impartial jury, drawn from a cross section of the community. The right to a jury trial embraces the right to a proper jury.

"It has been said that the right of trial by jury covers not only the personal privilege of a single suitor or accused person, but also the interests of jurors, judges, and all citizens, in benefits, direct and indirect, which the framers of the Constitution believed to be involved in the institution of trial by jury." 31 Am Jur, Jury § 11, p 17.

With reference to the high percentage of repeaters, as well as unemployed people, retired people, or housewives, on juries, it is obvious that an "at random" selection could not produce the same. It must logically follow that the practice resulted from the noncompliance with the statutory provisions relative thereto by the officials of the political subdivisions of the county, in that it is apparent that the names of those who have requested jury duty, in violation of the statute, were included, and that the names of employed people and the younger eligible men and women were excluded from the submitted jury list.

Even though this challenged jury has completed its term, this is not a moot question, inasmuch as it is apparent that the errors complained of in the selection of the jury in the instant case have occurred in prior jury selections and may continue in the future.

"Notwithstanding such questions and the issues presented by this record might be considered moot, we deem the case of sufficient importance to warrant our decision, even though it may be in the nature

of a declaratory decree." *Lafayette Dramatic Productions, Inc.,* v. *Ferentz* (1943), 305 Mich 193, 218.

It follows that we cannot sanction the method by which the jury array was formed in this case. The evil lies in the unrefuted wholesale exclusion of a large class of wage earners in disregard of the required statutory standards of jury selection. Jury service is a duty as well as a privilege of citizenship, and thus a blanket exclusion of wage earners, either young or old, however justified by prior actions of trial judges, must be counted among those tendencies which undermine and weaken our respected institution of jury trial.

Accordingly, this cause is remanded to the trial court with instructions that the method used by the officials of the respective political subdivisions of the county in the selection of a jury list was illegal and not in conformance with the applicable statutes; that plaintiff's motion should be granted; that a jury list should be drawn pursuant to the applicable statutes. It is apparent from the record and briefs that the county bar association and the trial courts are concerned, and rightly so, with the quality of jury arrays being returned by the respective political subdivisions of this county. The proper and legal selection of a jury list not only concerns the immediate disputants but also the wellbeing of the community, the public respect for the judicial process, and the public confidence in the correctness of results of trial by jury. Due to the public nature of the issues involved, no costs are awarded.

BURNS and QUINN, JJ., concurred.