MILFORD *v.* PEOPLE'S COMMUNITY
HOSPITAL AUTHORITY.

1. Administrative Law and Procedure—Public Hospital Authority—Bylaws—Presumption of Regularity.

   Court of Appeals will presume that bylaws adopted by hospital
   board of public hospital authority were adopted on recommendation of medical advisory committee pursuant to proper
   statutory procedures, in the absence of evidence to the contrary (CLS 1961, § 331.6).

2. Same—Public Hospital Authority—Reduction of Physician's
   Privilege—Standards.

   Policy in rules duly adopted by hospital board of public hospital authority that physician's privilege in hospital may be
   reduced if it appears to executive committee that such reduction would be to the best interest of hospital and its patients,
   does not furnish any standard to guide executive committee
   in application of policy, and is an indication of an attempt
   to confer arbitrary power (CLS 1961, § 331.6).

3. Physicians and Surgeons—Licenses—Practice in Hospitals.
   The license to practice medicine includes practice in public hospitals.

4. Administrative Law and Procedure—Regulation of Private
   Rights—Arbitrary Means.

   A public authority may not regulate private rights by purely
   arbitrary means.

5. Hospitals—Public Authority.
   A public hospital is a public authority.

---

References for Points in Headnotes

[1] 2 Am Jur 2d, Administrative Law § 748 *et seq.*
[2] 2 Am Jur 2d, Administrative Law §§ 96, 195.
[3-7] 26 Am Jur, Hospitals and Asylums § 9.
   Exclusion of or discrimination against physician or surgeon by
   hospital authorities.   24 ALR2d 850.

6. SAME—PUBLIC HOSPITAL AUTHORITY—REGULATIONS—STANDARDS.
    Bylaw of defendant public hospital authority, authorizing executive committee of public hospital to reduce physician's privileges if in the opinion of such committee it appears to the best interest of the hospital and its patients to do so, *held*, to contain no standard to guide committee (CLS 1961, § 331.6).

7. SAME—REGULATION—VIOLATION BY PHYSICIAN.
    Physician cannot be charged with violation of nonexistent standard or policy of medical practice by executive committee of public hospital.


Appeal from Washtenaw; Ager (William F., Jr.), J. Submitted Division 2 March 1, 1966, at Lansing. (Docket No. 695.) Decided September 13, 1966. Leave to appeal granted by Supreme Court February 28, 1967. See 378 Mich 752, 380 Mich 49.

Complaint by Albert F. Milford against People's Community Hospital Authority, a Michigan Corporation, and Barry H. Alford for injunctive relief against reduction of plaintiff's privileges as physician in Beyer Memorial Hospital. Judgment for defendants. Plaintiff appeals. Reversed and remanded for entry of injunctive judgment for plaintiff.

*Lawrence, Ulrich, Tripp & Barense,* for plaintiff.

*Cozadd, Shangle & Smith (B. Ward Smith,* of counsel), for defendants.

McGregor, P. J. The decisive issue in this case is whether or not the People's Community Hospital Authority has adopted legally effective standards for restricting the privileges of staff physicians in the hospitals operated by the authority.

Plaintiff in this case is a physician, duly licensed to practice medicine in the State of Michigan, and licensed under both State and Federal law to pre-

scribe, dispense and administer narcotic drugs. For over 20 years he has been a member of the medical staff of Beyer Memorial Hospital, now operated by the People's Community Hospital Authority, which was organized under PA 1945, No 47, as amended (CL 1948, § 331.1 *et seq.* [Stat Ann 1958 Rev § 5.2456(1) *et seq.*]). This hospital is the only hospital in Ypsilanti, Michigan. Defendant Barry H. Alford was the chief of staff of the hospital at the time the suit was commenced, October 15, 1963. When the amended complaint was filed, June 15, 1964, he was past chief of staff of the hospital, and a member of its executive committee.

In January, 1962, the board of directors, or hospital board of the People's Community Hospital Authority adopted regulations called "staff bylaws" for the supervision of the medical staffs of the hospitals operated by the Authority, including the Beyer Memorial Hospital. The bylaws delineating the organization of the staff of each hospital provide for the annual election by the staff of a chief of staff, a vice-chief of staff, and a secretary. These three elected officers, together with the chiefs of each of four administrative departments, the immediate past chief of staff, and two other members at large, form the executive committee of the staff of each hospital. The relevant bylaws read as follows:

"Sec. 9.10. REDUCTION IN PRIVILEGES. Any physician may have his privileges reduced by his executive committee, after notice and hearing thereon, if, in the opinion of such committee, it appears that such a reduction would be to the best interest of the hospital and its patients, in which case the physician shall have the same right of appeal and the proceedings shall be the same as in cases of revocation of membership."

"Sec. 4.13.   REVOCATION OF MEMBERSHIP.   Any physician may have his membership on the staff revoked after notice and hearing thereon by the executive committee of the hospital staff where he is a member for violation of any of these bylaws, unprofessional conduct, malpractice or unethical practice and it shall be the duty of such committee to revoke such membership where it appears that the revocation would be to the best interests of the hospital and its patients.   In the event any physician feels himself aggrieved by such action, he may appeal therefrom to his staff in which case the proceedings thereafter shall be the same as for original appointment to the staff, including the further right to appeal to the board."

Section 4.5 provides that the executive committee shall either approve or deny a physician's application for admission to the hospital staff after a report from the credentials committee.   Bylaw section 4.6 provides for review of the application for membership by the medical staff of the hospital involved.   The application is then forwarded to the board of directors for final action.   If the application is denied by the staff, the reasons for denial must be attached to the application if appeal is taken to the board of directors.

The undisputed facts show that the controversy in question was initiated when the plaintiff received a letter dated July 26, 1963, on Beyer Memorial Hospital stationery, signed by the defendant Alford, as chief of staff, reading as follows:

"The next regular meeting of the executive committee will be held on Friday, August 2, 1963, at 8:30 a.m. in the conference room of the superintendent's office.

"Your case #60530 will be discussed and you are requested to be present so that you may speak in your own behalf."

There was no mention in this letter of the nature of the matter to be discussed. The plaintiff attended the meeting of August 2, 1963, at which no stenographic record was kept. After discussion of the case, with him present, he was excused and the executive committee considered the matter further. After the meeting, the plaintiff received a letter containing the following:

"At the executive committee meeting of August 2, 1963, the following resolutions were passed:

" 'That Doctor Milford's handling of case #60530 be considered as inadequate, inappropriate and improper medical care, worthy of disciplinary action. That Doctor Milford be prohibited from using narcotic drugs beyond 48 hours except with the written approval on the order sheet of the chief of department or his designate until further orders from the executive committee.' "

The plaintiff has never been given any facts on which the decision was based. On August 12, 1963, the plaintiff wrote defendant Alford that he was appealing the decision of the executive committee. Plaintiff was subsequently notified that his appeal would be presented on October 22, 1963. On October 2, 1963, plaintiff asked to have a court reporter present at the October 22d hearing, so that an accurate transcript of the proceedings would be available. Under date of October 3, 1963, plaintiff was informed that the presence of a court reporter would not be permitted. Plaintiff then brought this action, praying that the court enjoin enforcement of the executive committee resolution of August 2, 1963.

The circuit judge denied the motions for summary judgment made by each side. On January 11, 1965, the trial was commenced before the judge without a jury. The plaintiff introduced no evidence other than the bylaws and then rested. The

circuit judge thereupon granted the defendants' motion to dismiss, from which this appeal is taken.

Plaintiff contends that, although he introduced no evidence other than the bylaws, the executive committee is completely without authority to impose the restrictions or sanctions in question upon the plaintiff. Plaintiff, first of all, contends that the bylaws themselves are void because they were adopted by the board of trustees, rather than the medical advisory committee. The relevant portions of the hospital act are as follows:

"Sec. 2. Such hospital authority shall be a body corporate with power to sue or be sued in any court of this State and shall have the power to exercise any and all powers necessary and incident to the acquisition, construction, improvement, enlargement, extension, ownership, maintenance and operation of 1 or more community hospitals." CLS 1961, § 331.2 (Stat Ann 1961 Cum Supp § 5.2456[2]).

"Sec. 5. The hospital authority authorized herein shall be directed and governed by a hospital board. * * * The hospital board shall also appoint a medical advisory committee whose duty shall be to advise the hospital board in regard to technical problems of hospital operation and in regard to surgical and medical policies. The members of such committee shall be duly licensed physicians and surgeons practicing in the territory served by such community hospitals." CLS 1961, § 331.5 (Stat Ann 1961 Cum Supp § 5.2456[5]).

"Sec. 6. * * * The medical advisory committee shall, with the approval of the hospital board, adopt rules, regulations and policies governing the professional work of such hospitals and the eligibility and qualifications of their medical staffs, which may conform, as nearly as practicable, to the applicable standards recommended by the American college of surgeons." CLS 1961, § 331.6 (Stat Ann 1958 Rev § 5.2456[6]).

Considering all of these sections together, it would appear that the general administration and supervision of the hospital is in the hands of the duly appointed hospital board. It is recognized by section 6, however, that the members of the hospital board will not have the medical training necessary for the adoption of policies governing the medical practice within the hospitals under their jurisdiction. The real authority, however, still remains in the hands of the hospital board, as indicated in the language of section 6, requiring approval of the hospital board of any rules or policies the advisory committee might adopt. The bylaws themselves indicate they were adopted by the board of directors of the authority on January 18, 1962. There are no references in the bylaws or in the record before this Court as to any action by the medical advisory committee.

In the absence of any evidence to the contrary, this Court will presume that the rules and procedures in question were adopted pursuant to the proper statutory procedures, set out in section 6, and that the bylaws insofar as they pertain to regulations and policy governing the professional staff, were the recommendations of the medical advisory committee. *Terre Haute Brewing Co., Inc.,* v. *Liquor Control Commission* (1939), 291 Mich 73, 80.

Assuming, therefore, that the bylaws were validly adopted, what application do they have to the particular facts of this case? The plaintiff herein contends that the bylaws state insufficient standards to be enforceable against him. The adoption of rules, regulations, and policies governing the professional work of such hospitals, and the eligibility and qualifications of their medical staffs are authorized by section 6. The question which immediately presents itself, is "what rule of medical policy did the plaintiff herein violate?" While section 4.13

of the bylaws indicates certain standards, the adequacy of which is not at issue herein, yet section 9.10 which is the authority for the executive board action in the instant case, contains absolutely no standard whatsoever. The only policy contained in the rules is that a physician's privileges may be reduced if it appears to the executive committee that such reduction would be to the best interest of the hospital and its patients. This states a policy which is capable of absolutely no objective application. This lack of any standard is an indication of an attempt to confer arbitrary power. *People* v. *Sturgeon* (1935), 272 Mich 319, 323. The license to practice medicine which the plaintiff in this case admittedly has, includes practice in public hospitals. *Albert* v. *Gogebic County Public Hospital* (1954); 341 Mich 344, 357. The Beyer Memorial Hospital is a public hospital. A public authority may not regulate private rights by purely arbitrary means. *Melconian* v. *City of Grand Rapids* (1922), 218 Mich 397, 405.

The real issue in this case is not the authority of the board to adopt standards of medical practice, but whether or not such a standard has been adopted for purposes of reduction of the privileges of doctors on the staffs of hospitals within the People's Community Hospital Authority, under bylaw section 9.10. This Court holds that no such standard has been adopted. Plaintiff, therefore, cannot be charged with a violation of a nonexistent standard or policy of medical practice.

The judgment is reversed and the case is remanded for the entry of an injunctive judgment. Costs are awarded to the plaintiff-appellant.

HOLBROOK and QUINN, JJ., concurred.