MILFORD *v.* PEOPLE'S COMMUNITY
HOSPITAL AUTHORITY.

OPINION OF THE COURT.

1. APPEAL AND ERROR—MOOT QUESTION—PHYSICIANS—HOSPITALS.
    Whether physician had any standing in court after his removal
    from staff of hospital pursuant to staff bylaws is a question
    retained for decision in case of great importance to doctors
    and publicly owned and operated hospitals, where he had
    sought injunction against enforcement of disciplinary action
    of the hospital's executive committee prior to his removal.

2. PHYSICIANS AND SURGEONS—LICENSES—PRACTICE IN PUBLIC HOS-
   PITALS.
    The license to practice medicine in the State of Michigan in-
    cludes the license to practice in public hospitals.

3. CONSTITUTIONAL LAW—DUE PROCESS—NOTICE—HEARING—FAIR
   TRIAL.
    Due process of law requires notice and opportunity to be heard
    and imports the right to a fair trial of the issues involved
    in the controversy and a determination of disputed questions
    of fact on the basis of evidence (US Const, Am 14; Mich
    Const 1963, art 1, § 17).

4. PHYSICIANS AND SURGEONS—RIGHTS MAY BE WAIVED.
    Proceedings to suspend or reduce physician's staff membership
    privileges in a public hospital fail to satisfy due process pro-
    vision of the Constitution where bylaws provide no qualifica-
    tions which physician must possess, provide no standard of
    knowledge or skill, and do not make any provision as to the

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4–6] 26 Am Jur, Hospitals and Asylums § 9.
    Exclusion of or discrimination against physician or surgeon by
    hospital authorities.  24 ALR2d 850.
[3] 2 Am Jur 2d, Administrative Law § 399.

character or conduct of the physician, but confer arbitrary power upon the executive committee and staff to grant or refuse staff membership at their whim or caprice (US Const, Am 14; Mich Const 1963, art 1, § 17).

5. HOSPITALS—PUBLIC HOSPITAL AUTHORITY—REGULATIONS—STANDARDS.

Bylaw of defendant public hospital authority authorizing executive committee of public hospital to reduce physician's privileges if in the opinion of such committee it appears to the best interest of the hospital and its patients to do so, *held*, to contain no standard to guide the committee (CLS 1961, § 331.6).

SEPARATE OPINION.

DETHMERS, C. J., and O'HARA, J.

6. HOSPITALS—PHYSICIANS AND SURGEONS—CURTAILMENT OF MEDICAL PROCEDURES—REVOCATION OF STAFF MEMBERSHIP—BYLAWS.

*Bylaws of public hospital should distinguish between a curtailment of certain medical procedures which the hospital staff considers improper treatment in a given case or type of case and the matter of revocation of a staff membership, especially where the revocation is tantamount, in practical effect, to revocation of the right to practice medicine.*

Appeal by leave granted from Court of Appeals Division 2; McGregor, P. J., and Holbrook and Quinn, JJ., reversing Washtenaw, Ager (William F., Jr.), J. Submitted November 7, 1967. (Calendar No. 21, Docket No. 51,646.) Decided February 9, 1968.

4 Mich App 142, affirmed.

Complaint by Albert F. Milford against People's Community Hospital Authority, a Michigan corporation, and Barry H. Alford for injunctive relief against reduction of plaintiff's privileges as physician in Beyer Memorial Hospital. Judgment for defendants. Reversed and remanded by the Court of Appeals. Defendant appeals. Affirmed. Issue

on reappointment raised by supplemental complaint
is remanded to circuit court for trial.

*Lawrence, Ulrich & Tripp* and *Dobson, Griffin
& Barense,* for plaintiff.

*Cozadd, Shangle & Smith (B. Ward Smith,* of
counsel), for defendant.

*Amicus Curiae:* Michigan State Medical Society,
by *Sweeny, Dodd, Kerr, Wattles & Russell (A.
Stewart Kerr* and *Donald C. Morgan,* of counsel).

T. M. KAVANAGH, J.   This case is here on appeal
from decision of the Court of Appeals which re-
versed an order of the Washtenaw county circuit
court dismissing plaintiff's complaint.   In 1963
plaintiff, a duly licensed medical doctor, was a
member of the staff of Beyer Memorial Hospital,
1 of 4 hospitals operated by defendant People's
Community Hospital Authority, a State agency
created pursuant to PA 1945, No 47, as amended.[1]
Defendant Barry H. Alford was the chief of staff
of Beyer Memorial Hospital.

The staff bylaws of defendant Hospital Authority
were adopted by the board of directors on January
18, 1962.   Pursuant to the provisions of section 9.10
thereof, the executive committee of Beyer Memorial
Hospital proposed to suspend or reduce certain of
the staff membership privileges of plaintiff in the
use of hospital facilities.

Plaintiff received a letter dated July 26, 1963,
signed by defendant Alford as chief of staff, which
read as follows:

---

[1] CL 1948 and CLS 1961, § 331.1 *et seq.* (Stat Ann 1958 Rev
and Stat Ann 1965 Cum Supp § 5.2456[1] *et seq.*).

"The next regular meeting of the executive committee will be held on Friday, August 2, 1963 at 8:30 a.m. in the conference room of the superintendent's office.

"Your case No 60530 will be discussed and you are requested to be present so that you may speak in your own behalf."

There was no mention in this letter of the nature of the matter to be discussed. Plaintiff attended said meeting, at which no stenographic record was kept, and after a discussion of the case in the presence of plaintiff, the executive committee excused him. After this meeting plaintiff received a letter containing the following:

"At the executive committee meeting of August 2, 1963 the following resolutions were passed:

"That Dr. Milford's handling of case No 60530 be considered as inadequate, inappropriate and improper medical care, worthy of disciplinary action. That Dr. Milford be prohibited from using narcotic drugs beyond 48 hours except with the written approval on the order sheet of the chief of department or his designate until further orders from the executive committee."

Plaintiff was not given any facts upon which the decision of the executive committee to discipline him was based. He filed a timely appeal to the full staff of Beyer Memorial Hospital, which appeal operated as a stay of the disciplinary action taken by the executive committee.

October 22, 1963, was set as the date for the hearing of the appeal by the staff. Plaintiff requested that a stenographic record be made of the hearing on appeal, and his request was denied.

Plaintiff filed a complaint in the Washtenaw circuit court on October 15, 1963, to enjoin defendants from enforcing the disciplinary action of the

executive committee and requested a judgment declaring the action of the executive committee a legal nullity.

Motions for summary judgment were made by both parties and denied by the court.

The trial commenced on January 11, 1965, before the circuit judge without a jury.  Plaintiff introduced no evidence other than the staff bylaws and then rested his case.

The trial judge in a written opinion, filed January 20, 1965, denied plaintiff's prayer for relief, finding that he had not sustained the burden of proof and further the court refused to adjudge the action of the executive committee in restricting plaintiff's rights as null and void.  The opinion directed the attorneys for defendants to prepare a judgment in accordance therewith.  On January 27, 1965, counsel for defendants filed a motion for entry of the judgment.

However, on January 20, 1965, plaintiff filed with the court a motion for leave to file a supplemental complaint along with certain affidavits in support thereof and a copy of the proposed supplemental complaint.

In the supplemental complaint plaintiff claimed that at the annual staff meeting of Beyer Memorial Hospital on January 12, 1965, the executive committee presented a list of those doctors who had been approved for reappointment to the hospital staff pursuant to section 4.12 of the hospital bylaws, which reads as follows:

"Section 4.12 ANNUAL REAPPOINTMENT.  At least 10 days prior to the annual meeting of the staff of each hospital in each calendar year the executive committee of each such staff shall meet and approve the reappointment of such present members as they may determine advisable.  The list of members as approved shall be referred by the secretary of such

committee to the secretary of his staff who shall forthwith send a copy thereof to all current members of such staff. At the annual meeting in each year of such staff the secretary thereof shall present such list as approved by its executive committee. The staff shall hear any objections to the reappointments as presented or hear any person whose reappointment has not been approved by the executive committee. The staff may by a two-thirds vote of its members present either approve the list of members as submitted or it may strike a name therefrom or add the name thereto of a physician whose name has been omitted by the executive committee. The secretary of each staff shall forward the list of physicians' names as approved to the secretary of the board for consideration by the board at their annual meeting. Any physician feeling himself aggrieved, because of his name being omitted from the list, as approved by the staff, may file a claim of appeal with the board in the same manner as is provided for an appeal on an original application, in which case the secretary of the board shall obtain a report from the secretary of the staff setting forth the reasons why the staff did not recommend reappointment of such physician. The procedure by the board for reappointment shall be the same as for original appointment."

Plaintiff's name did not appear on the list. The minutes of the annual staff meeting disclose that the reason for the removal of plaintiff's name from the reappointment list was that he had been considered guilty of "poor professional practice."

Thereafter, pursuant to the motion to file the supplemental complaint and the answer thereto, the circuit judge in an opinion dated March 11, 1965, stated "that (1) the matters brought forth in the supplement to the amended complaint would not create any new facts which would in any way alter the opinion of the court which was filed on January

20, 1965, and (2) the matters brought forward in plaintiff's supplement to amended complaint are not such as contemplated under supplemental proceedings as provided for in Rule 118.5, Michigan General Court Rules." The court denied plaintiff's motion to file a supplemental complaint and defendants were instructed to present (1) a separate order denying plaintiff's motion and (2) a judgment in accordance with the court's prior opinion.

On March 16, 1965, the order denying the motion for the supplemental complaint and the judgment of the court were signed by the circuit judge, and filed.

On April 1, 1965, plaintiff filed his claim of appeal from the judgment.

The Court of Appeals reversed the judgment of the circuit court for the reason the bylaws of People's Community Hospital Authority had "absolutely no standard whatsoever" to meet constitutional due process requirements. (4 Mich App 142, 149.)

Leave to appeal was granted by this Court on February 28, 1967.

We deal first with the subject of mootness. Plaintiff in his supplemental complaint alleges that he was removed from the staff of Beyer Memorial Hospital pursuant to section 4.12 of the staff bylaws, which provides for annual reappointment. One might argue that as plaintiff is no longer a member of the staff, the question of his reduction of privileges is moot. Appellant and appellees each request us to decide the question, since, as they say, the matter is of great importance not only to the hospital and doctor involved but to all the doctors and publicly owned and operated hospitals in the State.

The nature of this case is such that we are unlikely to again receive the question in the near

future, and doctors and other people dealing with public hospital corporations cannot hope to have an answer to the questions raised unless we proceed to a decision.[2] For these reasons, we conclude the case is of sufficient importance to warrant our decision. See *Lafayette Dramatic Productions, Inc.,* v. *Ferentz* (1943), 305 Mich 193; *Robson* v. *Grand Trunk Western Railroad Co.* (1966), 5 Mich App 90.

The issue for decision in this case is whether the People's Community Hospital Authority, a public hospital authority, has adopted legally effective standards for restricting the privileges of its staff.

The pertinent bylaws read as follows:

"Section 9.10 REDUCTION IN PRIVILEGES. Any physician may have his privileges reduced by his executive committee, after notice and hearing thereon, if, in the opinion of such committee, it appears that such a reduction would be *to the best interest of the hospital and its patients,* in which case the physician shall have the same right of appeal and the proceedings shall be the same as in cases of revocation of membership." (Emphasis supplied.)

"Section 4.13 REVOCATION OF MEMBERSHIP. Any physician may have his membership on the staff revoked after notice and hearing thereon by the executive committee of the hospital staff where he is a member for violation of any of these bylaws, unprofessional conduct, malpractice or unethical practice and it shall be the duty of such committee to revoke such membership when it appears that the revocation would be to the best interests of the hospital and its patients. In the event any physician feels himself aggrieved by such action, he may appeal therefrom to his staff in which case the proceedings thereafter shall be the same as for original

---

[2] Miller, "Soon: protected hospital appointments" (1967), Medical Economics, vol 44, No 23, p 25.

appointment to the staff, including the further right to appeal to the board."

Defendant People's Community Hospital Authority is a State agency created pursuant to PA 1945, No 47, as amended. Section 6 of the act[3] provides that the medical advisory committee shall, with the approval of the hospital board, adopt rules, regulations, and policies governing the professional work of such hospitals *and the eligibility and qualifications of their medical staff,* which may conform, as nearly as practical, to the applicable standards recommended by the American College of Surgeons. Pursuant to this portion of the statute the bylaws were adopted by the board of directors only on January 18, 1962.[4]

It is to be noted that we deal here with a public hospital authority and not with a private or charitable institution.

Plaintiff is licensed to practice medicine in the State of Michigan. This license to practice medicine includes the practice thereof in public hospitals. *Albert* v. *Gogebic County Public Hospital Board of Trustees* (1954), 341 Mich 344, 357.

Under the Constitution of the United States, Am 14, § 1, and the Michigan Constitution of 1963, art 1, § 17, no one may be deprived of life, liberty, or property without due process of law. Due process requirements are summarized in various Michigan cases. We first turn our attention to the case of

_____

[3] CLS 1961, § 331.6 (Stat Ann 1958 Rev § 5.2456[6]).

[4] Neither party raises the question in this appeal that the medical advisory committee, with the approval of the hospital board, failed to adopt any rules, regulations, and policies pursuant to the statute. The only provisions made were in the corporation bylaws. See OAG 1951–1952, No 1306, p 164, holding the last sentence of CL 1948, § 331.6 (Stat Ann 1949 Rev § 5.2456[6]) unconstitutional as an attempt to delegate legislative power. See, also, *McKibbin* v. *Corporation & Securities Commission,* 369 Mich. 69.

*Napuche* v. *Liquor Control Commission* (1953), 336 Mich 398, wherein it is stated (pp 403, 404):

" 'Due process of law requires notice and opportunity to be heard. It imports the right to a fair trial of the issues involved in the controversy and a determination of disputed questions of fact on the basis of evidence.' *Dation* v. *Ford Motor Co.* (1946), 314 Mich 152, 167 (19 NCCA NS 158).

" 'But there must be a hearing in a substantial sense. And to give the substance of a hearing, which is for the purpose of making determinations upon evidence, the officer who makes the determinations must consider and appraise the evidence which justifies them. * * *

" 'The maintenance of proper standards on the part of administrative agencies in the performance of their quasi-judicial functions is of the highest importance and in no way cripples or embarrasses the exercise of their appropriate authority. On the contrary, it is in their manifest interest. For, as we said at the outset, if these multiplying agencies deemed to be necessary in our complex society are to serve the purposes for which they are created and endowed with vast powers, they must accredit themselves by acting in accordance with the cherished judicial tradition embodying the basic concepts of fair play.' *Morgan* v. *United States,* 304 US 1, 22 (58 S Ct 773, 778, 82 L ed 1129, 1134).

" 'Unless the right is waived, the person charged is at least entitled to:

" '(1) Notice of a time and place of hearing.

" '(2) A hearing before a properly authorized body.

" '(3) A reasonably definite statement of the charge or charges preferred against the accused.

" '(4) The right to cross-examine the witnesses who testify against him.

" '(5) The right to produce witnesses in his own behalf.

" '(6) A full consideration and a fair determination according to the evidence of the controversy by the body before whom the hearing is had.' *Hanson* v. *State Board of Registration in Medicine* (1931), 253 Mich 601, 607."

In the case of *Osius* v. *City of St. Clair Shores* (1956), 344 Mich 693, the Court struck down as unconstitutional an ordinance of the city of St. Clair Shores as a deprivation of substantive due process of law. The plaintiffs in that case sought to obtain a permit to build a service station on certain property owned by them and zoned "business B," which zoning permitted construction of service stations under certain circumstances. The zoning ordinance provided, however, that establishment of service stations in these zones was left entirely to the zoning board of appeals. One section of the ordinance permitted the board to vary or modify the application of the regulations in harmony with their general purpose or intent. The Court stated (p 698):

"There is no doubt that a legislative body may not delegate to another its lawmaking powers. It must promulgate, not abdicate. This is not to say, however, that a subordinate body or official may not be clothed with the authority to say when the law shall operate, or as to whom, or upon what occasion, provided, however, that the standards prescribed for guidance are as reasonably precise as the subject matter requires or permits. As we said in *Devereaux* v. *Township Board of Genesee Township* (1920), 211 Mich 38, 43:

" 'The statute in question provides no method for the application for licenses, contains no qualifications which the applicant must possess, provides no standard of fitness, makes no provisions as to the character of the structure or equipment to be used in the business regulated. It, in fact, attempts to confer upon the township board the arbitrary power

to grant or refuse a license, according to its whim or caprice. Under all the authorities, we think this cannot be done.' "

The Court further stated (p 699):

"For in the case before us there is no reasonable standard whatever. The presumption of constitutionality of zoning regulations referred to by us in *Hammond* v. *Bloomfield Hills Building Inspector* (1951), 331 Mich 551, cannot prevail against unconstitutionality patent on the face of the ordinance itself, nor can the ordinance be saved by its broad statements as to the public health, safety, and general welfare, since such statements afford no sufficient guide for the board in the exercise of its discretion. *Keating* v. *Patterson* (1945), 132 Conn 210 (43 A2d 659)."

A further example of substantive due process requirements is found in the case of *Hoyt Brothers, Inc.,* v. *City of Grand Rapids* (1932), 260 Mich 447. In that case plaintiff was engaged in business in the city of Grand Rapids selling merchandise through employees who solicited orders by house-to-house canvass. The employees or sales agents were furnished with a certificate of identification which, among other things, provided that a certain orphanage received 10% of the net profits made by the corporation on the merchandise. The city of Grand Rapids had an ordinance which prohibited solicitation for charitable purposes without first obtaining a permit from the city manager. A permit could be issued by the city manager when it appeared to him that the charity was a "worthy one" and that the person making the application was "fit and responsible." Of these standards—"worthy" and "fit and responsible"—the Court said (p 451):

"The ordinance contains no rule or provision by which the city manager is to determine whether the

charity is 'worthy' or the applicant is 'fit and responsible.' "

In the case of *In re Van Hyning* (1932), 257 Mich 146, the defendant appealed from an order of the State board of registration revoking his certificate of registration to practice medicine and surgery in Michigan. The action of the board of registration was taken after a hearing on a charge stating that defendant was guilty of grossly unprofessional and dishonest conduct and particularly in having a professional connection with and lending his name to an unlicensed individual who had examined and diagnosed the physical condition of another. In attacking the revocation of the license, the defendant contended the provisions of the statute which gave the State board of registration authority to revoke a physician's certificate were unconstitutional because it gave the board power to revoke the license without furnishing it with a definite and certain standard under which to administer the power. Of this the Court said (p 151):

"We are unable to agree with this contention. *If the statute merely declared that a license should be revoked for 'unprofessional and dishonest conduct,' it would be open to the objection made by the defendant.* But it goes farther, and defines 'unprofessional and dishonest conduct' to be 'having professional connection with, or lending one's name to an illegal practitioner.' " (Emphasis supplied.)

Unlike the *Van Hyning Case,* the bylaws in the instant case[5] do not attempt to define provisions as to reduction of privileges.

We then turn to the provisions of the bylaws in the case at bar where a physician may have his privileges reduced if in the opinion of the committee it appears that a reduction would be "to the best

---

[5] See footnote 4, *supra.*

interest of the hospital and its patients." What is in the best interest of the hospital and its patients? The only possible answer to this question is: anything that the executive committee in its sole opinion decided would be for the best interest of the hospital and its patients.

The bylaws in question provide no qualifications which the staff physician must possess, provide no standard of knowledge or skill, nor do they make any provision as to the character or conduct of the physician. They, in fact, attempt to confer upon the executive committee the arbitrary power to reduce privileges according to their whim or caprice, subject only to appeal to the staff and ultimately to the board, whose powers of review are equally arbitrary. "Under all the authorities, we think this cannot be done." *Devereaux* v. *Township Board of Genesee Township* (1920), 211 Mich 38, 43. See, also, cases therein cited.

Defendants and *amicus curiae* rely almost entirely upon the case of *North Broward Hospital District* v. *Mizell* (Fla, 1962), 148 So 2d 1, which approved a bylaw adopted pursuant to a statutory delegation which authorized the board of commissioners of public hospitals to see that "the welfare and health of patients and the best interests of the hospital may at all times be best served." The governing board of the hospital adopted the following bylaw:

"The board of commissioners reserves the right to remove any member of the medical staff or to deprive any physician or surgeon of the privileges of the hospital whenever in their sole judgment the good of the hospital or the patients therein may demand it."

This Court, however, has failed to go that far in any of its decisions, and the defendants in the

case before us have failed to present any justification for so doing.

We agree with the Court of Appeals in its holding that there are absolutely no standards in these bylaws which would meet the constitutional due process requirements.

Since the trial court denied plaintiff the right to file his supplemental complaint, the question of the constitutionality of section 4.12 of the staff bylaws dealing with annual reappointment has not been passed upon by either the Court of Appeals or the trial court.

The decision of the Court of Appeals is affirmed, and the reappointment issue is remanded to the trial court for further proceedings in accordance with this opinion.

Plaintiff shall have costs.

KELLY, BLACK, SOURIS, ADAMS, and BRENNAN, JJ., concurred with T. M. KAVANAGH, J.

O'HARA, J. *(concurring in result)*. I concur reluctantly in the result reached by Mr. Justice KAVANAGH in part one of his opinion dealing with sections 9.10 and 4.12 of the bylaws. My reluctance derives from the unfortunate wording of the involved sections. Section 9.10 rests its appeal provision on section 4.13. Hence, it is impossible to distinguish between the action of a medical staff in reducing a physician's privileges and the revocation of his staff membership. It is one thing to curtail a certain medical procedure which a hospital staff considers improper treatment in a given case or type of case. It is quite another to revoke a staff membership, especially when viewed from the standpoint of those places in our State where revocation of a hospital staff membership is tantamount

in practical effect to revocation of the right to practice medicine. To me, there is a vast difference.

However, I agree with Justice Kavanagh that the constitutionality of section 4.12 should be considered in the first instance by the trial court.

Dethmers, C. J., concurred with O'Hara, J.