TOUCHTON v RIVER DISTRICT COMMUNITY HOSPITAL

1. HOSPITALS—COMMUNITY HOSPITALS—GOVERNING BODIES—STAFF—
   STANDARDS OF ELIGIBILITY.

   The governing body of a community hospital has a right to set
   standards of eligibility to be met by persons seeking admission
   to its medical staff.

2. HOSPITALS—PUBLIC HOSPITALS—COURTS—PODIATRISTS—RIGHT TO
   PRACTICE—FACTFINDING—APPEAL AND ERROR.

   The issue of whether a duly licensed podiatrist has a right equal
   to that possessed by doctors of medicine to practice within the
   limits of his license in public hospitals is incapable of resolu-
   tion by a trial court absent some factfinding as to the hospital's
   policies, rules and regulations regarding podiatrists in general,
   and its specific actions regarding a plaintiff's application.

3. ACTION—PODIATRISTS—DISMISSAL—COMPLAINTS—ARBITRARINESS—
   DUE PROCESS—EQUAL PROTECTION—PREMATURE DISMISSAL—
   FINDINGS OF FACT—CONCLUSIONS OF LAW.

   A trial court's order dismissing a podiatrist's complaint alleging
   that a hospital's denial of his application for staff privileges
   was arbitrary and capricious, a denial of due process of law,
   and a denial of equal protection of the law was premature
   where the court made no findings of fact or conclusions of law
   on these issues.

Appeal from St. Clair, Ernest F. Oppliger, J.
Submitted April 6, 1977, at Lansing. (Docket No.
28131.) Decided June 8, 1977.

Complaint by David T. Touchton, D. P. M., a
podiatrist, against River District Community Hos-

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 40 Am Jur 2d, Hospitals and Asylums §§ 8–11.
   Exclusion or discrimination against physician or surgeon by hospi-
   tal authorities. 37 ALR3d 645.
[2, 3] 76 Am Jur 2d, Trial §§ 1252–1254.

pital seeking an injunction ordering defendant to grant him full staff privileges and seeking compensatory and exemplary damages for previous denial of such privileges. Judgment for defendant. Plaintiff appeals. Affirmed in part, reversed in part and remanded.

*Hall & Andary,* for plaintiff.

*Richard S. Weber,* for defendant.

Before: BRONSON, P. J., and M. F. CAVANAGH and C. J. BYRNS,* JJ.

PER CURIAM. Plaintiff is a podiatrist, licensed to practice as such in Michigan pursuant to 1915 PA 115, as amended, MCLA 338.301 *et seq.;* MSA 14.661 *et seq.* For some years he has been attempting to secure staff privileges at the River District Community Hospital, located in St. Clair County. Plaintiff submitted a formal application for such privileges in late 1969. When staff privileges had not been granted plaintiff by 1973, after several years of various administrative procedures, plaintiff filed suit against the hospital in St. Clair County Circuit Court. Plaintiff requested an injunction ordering the defendant hospital to grant him "full and complete staff privileges afforded to all other physicians and surgeons at defendant's hospital". Plaintiff also sought compensatory and exemplary damages in a combined amount of $450,000.

Motions by defendant for summary and accelerated judgment were denied prior to trial, and the parties agreed to submit the case on an agreed question of law, which was stated as follows:

---

* Circuit judge, sitting on the Court of Appeals by assignment.

"Whether a non-private community hospital is required to grant a licensed podiatrist full staff privileges identical to those of duly licensed physicians and surgeons on its medical staff."

Briefs were submitted on this question by the parties and several *amici curiae* and the trial court issued an opinion on December 11, 1975. The ambiguity of the "agreed question" was revealed by the briefs, which discussed several related issues, as well as by the opinion. The opinion, citing MCLA 331.6; MSA 5.2456(6) and MCLA 331.422; MSA 14.1179(12), held that the fact that plaintiff had been granted a license to practice podiatry in Michigan did not in itself entitle plaintiff to full staff privileges at the defendant hospital as a matter of right and that the hospital had a right pursuant to the cited statutes to set forth eligibility requirements for an applicant in the position of plaintiff.

The opinion went on to say that a final decision in the case could not be reached unless and until three things were done:

"1. Defendant River District Community Hospital shall within thirty (30) days from date of this opinion submit to the plaintiff, Dr. David Touchton, D. P. M., a group of questions authorized under its rules and regulations as it applies to the plaintiff applicant, a licensed podiatrist.

"2. Plaintiff, Dr. David T. Touchton, D. P. M., shall have thirty (30) days from receipt of the above referred to questions to answer same in writing.

"3. Defendant, River District Community Hospital, shall have thirty (30) days upon receipt of written answers to act upon the application of plaintiff and shall notify the plaintiff of their decision. This decision shall be made by the duly authorized authority of the defendant hospital."

Questions were submitted to plaintiff, plaintiff responded, and the hospital board denied plaintiff's application on February 26, 1976.

Defendant then filed a motion for entry of judgment pursuant to the trial court's opinion of December 11, 1975. On March 15, 1976, the trial judge entered a judgment holding, in accord with the previous opinion, that the governing body of the hospital had a right to determine the qualifications of practitioners in the hospital. Plaintiff's complaint was ordered dismissed with prejudice.

Plaintiff appeals from the March 15, 1976, judgment. Again, the agreed question of law is said to be presented, and the parties argue various related issues under that question. Upon review, we conclude that the single issue actually decided below was correctly decided, but that dismissal of plaintiff's action was unwarranted given the state of the record on other issues presented.

The single reviewable argument made by plaintiff concerns whether the defendant hospital has a right to set standards of eligibility to be met by licensed podiatrists seeking staff privileges. Plaintiff argues that MCLA 338.301; MSA 14.661[1] ren-

---

[1] That section reads as follows:

"Sec. 1. As used in this act, 'podiatrist' or 'chiropodist' means a physician and surgeon who examines, diagnoses, and treats abnormal nails, superficial excrescences occurring on the hands and feet, including corns, warts, callosities, bunions, and arch troubles or one who treats medically, surgically, mechanically, or by physiotherapy, ailments of the human foot, or one who is qualified as a podiatrist or chiropodist within the meaning of this act, except as hereinafter provided, through a certificate of qualification or license issued by the board of registration in podiatry. The words 'chiropodist', 'chiropody', and 'chiropodical' are synonymous with the words 'podiatrist', 'podiatry', and 'podiatric'."

*But see* MCLA 338.308; MSA 14.669, providing in part as follows:

"The name or title 'physician and surgeon' as used in this act shall not confer any privileges of practice upon any podiatrist other than those specifically conferred by the language in section 1 of this act * * * ."

ders podiatrists to be "physicians and surgeons" within the meaning of MCLA 331.163; MSA 14.1142, which, in turn, is said to grant all "physicians and surgeons" the absolute right to practice in a public hospital without being required to meet any standards or regulations in addition to those imposed by the body licensing such physicians and surgeons. In addition to these statutes, plaintiff relies upon *Albert v Gogebic County Public Hospital Board of Trustees,* 341 Mich 344; 67 NW2d 244 (1954).

In *Albert,* the Supreme Court construed several sections of the so-called county hospital act, 1913 PA 350, as amended, MCLA 331.151 *et seq.;* MSA 14.1131 *et seq.,* as it then read. At that time, § 13 of that act read as follows:

"The patient shall have absolute right to employ at his or her own expense his or her own physician or nurse, and when acting for any patient in such hospital the physician employed by such patient shall have exclusive charge of the care and treatment of such patient, and nurses therein shall as to such patient be subject to the directions of such physician, subject always to such rules and regulations as shall be established by the board of trustees under the provisions of this act." Former MCLA 331.163; MSA 14.1142.

Reading this provision in conjunction with two other sections of the act referring to rule making powers of the county hospital boards, the Court concluded that the license granted the plaintiff, Dr. Albert, by the State Board of Registration in Medicine to practice medicine and surgery in Michigan included practice in public hospitals and that no provision of the county hospital act suggested that "the hospital board may suspend, even

partially, the license of a regularly licensed practitioner. Suspension is left with the State Board of Registration in Medicine". *Albert, supra,* p 357.

Plaintiff's reliance on *Albert* is unwarranted. After that decision, § 13 of the county hospital act was amended by 1958 PA 105 to read as follows:

"Sec. 13. All physicians and surgeons licensed under the laws of Michigan shall have the privilege of treating patients in the hospital, subject always to such rules and regulations as shall be established by the board of trustees under the provisions of this act. The patient shall have the right to employ at his own expense his own physician or nurse, and when acting for any patient in such hospital the physician employed by the patient shall have charge of the care and treatment of such patient." MCLA 331.163; MSA 14.1142.

At the same time, § 11 of the act was also amended to read as follows:

"Sec. 11. When such hospital is established, the physicians, nurses, attendants, the persons sick therein and all persons approaching or coming within the limits of same, and all furniture and other articles used or brought there shall be subject to such rules, regulations and policies as said board, with the advice of the medical staff, may prescribe governing the operation of the hospital and the professional work, surgical privileges, conduct and maintenance of proper medical records of and by the physicians and surgeons using said hospital facilities. The board of trustees of the hospital may deny hospital privileges and facilities to any physician or surgeon who violates any of the provisions of this act or any rules, regulations or policies adopted under the provisions of this act." MCLA 331.161; MSA 14.1140.

It seems clear that by virtue of 1958 PA 105, the Legislature intended to and did overrule the *Al-*

*bert* decision, based as it was purely on statutory construction.

The defendant in this case is a community hospital organized and operating pursuant to 1945 PA 47, as amended, MCLA 331.1 *et seq.;* MSA 5.2456(1) *et seq.* That act provides for the creation of a hospital board, which is given the following authority in § 6 of the act:

> "The board shall adopt bylaws, rules and policies governing the operation and professional work of the hospital and the eligibility and qualifications of its medical staff. Physicians, nurses, attendants, employees, patients and persons approaching or on the premises of the hospital and furniture, equipment and other articles used or brought thereon shall be subject to such bylaws, rules and policies as the hospital board may adopt or authorize to be adopted. The board may deny or revoke staff membership, suspend or reduce hospital privileges to a physician who violates any provision of the medical staff bylaws, rules and policies." MCLA 331.6; MSA 5.2456(6).

The right of the medical advisory committee of a community hospital, with the approval of the hospital board of a hospital organized under this act, to adopt rules, regulations and policies governing the eligibility and qualifications of their medical staff was seemingly acknowledged by the Supreme Court in *Milford v Peoples Community Hospital Authority,* 380 Mich 49, 57; 155 NW2d 835 (1968). That case went on to hold that upon restricting the privileges of a staff member, a public hospital is required to accord the staff member notice and a hearing and make a decision pursuant to reasonably precise standards.

Thus it is clear that the trial court ruled correctly on plaintiff's most extravagant claim. The defendant hospital has the right to adopt rules,

regulations and policies governing the eligibility and qualifications of their medical staff. But merely answering this question does not decide this case.

Other issues were argued by the parties in the trial court as well as on appeal as falling under the agreed question of law. Plaintiff makes a less sweeping claim that as a duly licensed podiatrist, he has a right to practice in public hospitals equal to that possessed by doctors of medicine, though within the limits of his license, and that he was denied that right. This is an issue within the agreed question of law, argued by the parties, but incapable of resolution absent some factfinding as to the hospital's policies, rules and regulations regarding podiatrists in general and its actions regarding plaintiff's application.

Another issue which plaintiff has raised, and which the parties have argued both at trial and on appeal, is that the hospital's denial of plaintiff's application was arbitrary and capricious and amounted to a denial of due process. The trial court appears to have had this issue in mind upon ordering defendant to submit questions to plaintiff and act upon plaintiff's responses prior to entering a final judgment. However, upon entering final judgment, the trial court made no reference to the questions, answers, or actions by defendant and did not address the issue. Again, findings of fact would appear necessary to permit resolution of this issue.

The same can be said about plaintiff's final argument, that he was denied equal protection of the laws.

Thus it appears that the trial court's order dismissing plaintiff's complaint was entered prematurely. We can affirm the trial court ruling that

defendant has the right to regulate qualifications of persons seeking to practice in the hospital. However, we must reverse the dismissal of plaintiff's complaint and remand the case for trial, findings of fact, and conclusions of law on the remaining issues presented.

Affirmed in part, reversed in part. Remanded for further proceedings. Costs to abide the final result.