Janice M. DORSTEN, D.O., Plaintiff,

v.

LAPEER COUNTY GENERAL HOSPITAL; Dr. Clifford House; Dr. Randy Bork; Dr. William Heitsch; Dr. Charles Leidheiser; Dr. Paul Lepor; Dr. Harry Zemmer; Dr. Jules Reinhardt; Destain Stewart; Richard Bahs; Newton Davis, Jointly and Severally, Defendants.

No. 79–40008.

United States District Court,
E. D. Michigan, S. D.

Sept. 2, 1981.

Malcolm A. Harris, Farmington Hills, Mich., Philip Green, Ann Arbor, Mich., for plaintiff.

Bruce W. Franklin, Troy, Mich., John A. Ransom, Flint, Mich., Gilbert M. Frimet, Alan G. Gilchrist, Southfield, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

### I  FACTS

This action was brought by Janice M. Dorsten, an osteopathic physician duly licensed by the state of Michigan to practice her profession. In May of 1976, Dr. Dorsten, (hereinafter plaintiff) applied for staff privileges with Lapeer County General Hospital (hereinafter defendant hospital or hospital). In July, 1976, defendant hospital granted plaintiff probationary staff privileges. These privileges included: general medicine; diagnosis; non-operative obstetrics; minor surgery; first aid in emergencies and emergency room privileges.

In May, 1978, the hospital's medical board recommended to the hospital's Board of Trustees that plaintiff's probationary status be terminated. A few weeks later, plaintiff appealed this determination to an ad hoc committee appointed by defendant hospital. Although the record is not altogether clear, it would appear that the ad hoc committee caused the medical board to reverse the earlier recommendation. The reversal allowed plaintiff to continue her use of the staff facilities. In August, 1978, however, plaintiff's probationary status was suspended, and the medical board again recommended to the Board of Trustees that plaintiff's privileges be terminated. Prior to a final determination, plaintiff resigned terminating her probationary status.

### II  MOTION AND ISSUES BEFORE THE COURT

Defendant hospital has filed a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Motion is based on the theory that plaintiff has not stated a Constitutional violation by defendant. Consequently, defendants assert that, as a matter of law, there has been no violation of Section 1983, Title 42, United States Code; the statute upon which plaintiff has based her claim.

Plaintiff claims that her Constitutional rights have been violated. She asserts that the suspension of her probationary staff privileges was due to gender-based discrimination in violation of the Fourteenth Amendment's equal protection clause. Plaintiff also asserts that she was deprived of a property right by the suspension of her probationary staff privileges. Plaintiff claims that she was thus deprived of the due process guaranteed by the Fourteenth Amendment.

### III  ANALYSIS OF LEGAL ISSUES

(a) Equal Protection Clause Theory

Defendants' Motion to Dismiss is based exclusively on a due process argument. Defendants contend that plaintiff's probationary right to the use of staff facilities is not a property interest within the meaning of the due process clause. Therefore, as the argument goes, plaintiff was not entitled to any particular procedural safeguards with

respect to termination of her probationary status.

Defendant seems to forget that plaintiff's section 1983 action is based partially on an equal protection clause theory. In her Complaint, plaintiff has asserted that the revocation of her probationary status was due to her gender. This case, therefore, involves a sex discrimination claim as well as a procedural due process claim.

■ The Supreme Court has held that gender-based classifications must be subjected to special Constitutional scrutiny. The Court has set out a standard of review that is intermediate between the "rational basis" test and the "strict scrutiny" test. Gender-based classifications violate the equal protection clause of the Fourteenth Amendment unless such classifications "bear a close and substantial relationship to important governmental objectives." *Craig v. Boren*, 429 U.S. 190, 197, 97 S.Ct. 451, 456, 50 L.Ed.2d 397 (1976). This standard of review makes it difficult for a gender-based classification to pass Constitutional muster. In recent years the Court has, on many occasions, used the intermediate standard to strike down governmental acts of sex discrimination. *See e.g., Califano v. Goldfarb*, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977); *Orr v. Orr*, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979); *Caban v. Muhammed*, 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979).

■ In evaluating a Rule 12(b)(6) motion, all the allegations in the complaint must be taken as true. *See* Wright and Miller, Federal Practice and Procedure § 1357. The Court thus accepts, for purposes of this Motion only, plaintiff's statement that the suspension of her probationary status was a product of gender-based discrimination. Given that such discrimination did occur, plaintiff stands a good chance of prevailing in her Section 1983 action. It is, therefore, rather obvious that with respect to the equal protection aspect of this case the defendants' Rule 12(b)(6) Motion must be DENIED.

(b) Procedural Due Process Theory

A much closer question is presented by plaintiff's argument that her dismissal was a violation of procedural due process. Plaintiff contends that the procedures by which her probationary status was revoked amount to a denial of the due process that is guaranteed by the Fourteenth Amendment. As was noted earlier in the Opinion, defendants deny that plaintiff enjoyed a property interest within the ambit of the due process clause. It thus appears that the procedural due process aspect of defendants' Rule 12(b)(6) Motion turns on whether plaintiff was the holder of a Constitutionally protected property interest.

■ The Court would like to emphasize at the outset that it is considering a procedural—not a substantive—due process claim. The Court is well aware that Michigan hospitals have the right to set standards of eligibility that must be met by physicians seeking staff privileges. *See Touchton v. River District Hospital*, 76 Mich.App. 251, 256 N.W.2d 455 (1977). If such standards rest on a rational basis, the Fourteenth Amendment is not violated. In the instant case, however, the Court is not considering whether a hospital has the authority to set such standards. Instead, the Court is merely considering whether the plaintiff had the right to adequate procedural safeguards prior to the application of the hospital's eligibility standard.

In considering the procedural due process claim, the Court must first determine the source of law that will define the nature and extent of a property interest. In *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), the Supreme Court pointed out that property interests are created and defined by "an independent source such as state law." Furthermore, in *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976), the Court declared that the existence of a property interest "must be decided by reference to state law." In light of *Roth* and *Bishop*, this Court must be guided by Michigan law in deciding whether plaintiff's probationary status is a property interest.

Michigan law recognizes that an occupational license is a property right. *Dentistry Board v. Blumer*, 78 Mich.App. 679, 681 (1977). Here, however, defendant merely suspended plaintiff's privilege to use the staff facilities at defendants' hospital. This is a far cry from a license revocation, and thus *Blumer* is not decisive with respect to the point at issue in the instant case.

Nevertheless, it cannot be doubted that plaintiff lost an important interest upon the suspension of her probationary status. It could be that the probationary status is a property interest in the sense that it is an incident to plaintiff's occupational license. *See Milford v. People Housing Authority*, 380 Mich. 49, 57, 155 N.W.2d 835 (1960). Furthermore, once the probationary status was conferred upon plaintiff, she acquired a variety of rights and benefits. Indeed, as paragraph six of the Complaint points out, plaintiff's probationary status privileges included: general medicine; diagnosis; non-operative obstetrics; minor surgery; first aid in emergency and emergency room privileges.

This Court will not at this time hold that the probationary status is a property interest. The Court does hold, however, that the possibility of a property interest is strong enough to survive the Rule 12(b)(6) Motion on this record where only the Complaint is examined. A Rule 12(b)(6) Motion should not be granted unless it appears "beyond doubt" that the plaintiff cannot state a claim. Wright and Miller, Federal Practice and Procedure, Section 1357. In fact, on the basis of the Complaint, there is certainly more than a slight doubt that the defendant will prevail. Hence, the Court cannot grant the rule 12(b)(6) Motion.

It appears as if the parties, particularly the defendant hospital, are proceeding on the basis that "probationary status" is a static term with only one meaning. This is inaccurate.

It remains for the attorneys to demonstrate whether or not the probationary status is a property interest under Michigan law. This can be accomplished by first comparing and analysing the various components that make up the probationary status. Once this is done, the lack of permanence that inheres in any "probationary" status can be balanced against the particular probationary status that was enjoyed by the plaintiff. This type of analysis—an analysis that has not yet been submitted to the Court in this case—will resolve the property issue. For the present, it is enough for this Court to hold that the extremely rigorous standards of a Rule 12(b)(6) Motion have not been met. Therefore, the Rule 12(b)(6) Motion, in its entirety, is DISMISSED.

IT IS SO ORDERED.