**David Lee TOINS, Plaintiff,**

v.

**Sergeant Robert IGNASH and Flint Police Department, Defendants.**

**No. 80–40332.**

United States District Court, E. D. Michigan, S. D.

March 4, 1982.

David Lee Toins, in pro. per.

Richard J. Figura, City Atty., Loyst Fletcher, Jr., Asst. City Atty., Flint, Mich., for defendants.

MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

I  FACTS

This is a pro se lawsuit filed by David L. Toins. Plaintiff Toins, currently a prisoner at Southern Michigan Prison at Jackson, brings this action under 42 U.S.C. § 1983, seeking an order directing the Flint Police

Department to return plaintiff's confiscated automobile to plaintiff's mother.[1]

The chain of facts giving rise to this action began on October 10, 1978. On that date, Sergeant Robert Ignash, a member of the Flint Police Department, conducted a search of an automobile owned by plaintiff. The search—carried out pursuant to a duly-issued search warrant—originally was designed to produce a butcher knife allegedly used by plaintiff in the stabbing of Jeffrey Harris.[2] As he carried out the search, however, Sergeant Ignash noticed fingerprints containing a dark red substance on the automobile's deck lid. This observation prompted Sergeant Ignash to seize the automobile as "plain view" evidence discovered in the course of a lawful search.[3]

Although the facts before this Court are not entirely clear, it appears that plaintiff's automobile has remained in the custody of the Flint Police Department. Defendant Police Department contends that plaintiff has never asked for the return of his automobile. Plaintiff, on the other hand insists that he has authorized his mother to reclaim the automobile.

It would seem rather obvious that the filing of this lawsuit is a "request" by plaintiff for the return of his car. Nevertheless, the time is not yet ripe for the resolution of this factual issue. Instead, the task at hand is the pending motion to dismiss filed by defendant Ignash and defendant Flint Police Department.

In liberally construing this prisoner petition,[4] it would appear that there are two genuine legal issues:[5] The first issue involves the validity of Sergeant Ignash's seizure of plaintiff's automobile. If this seizure was violative of the Fourth Amendment, plaintiff certainly is entitled to the return of his automobile as a form of equitable relief against defendant Ignash's constitutional tort.

The second issue involves the Police Department's retention of plaintiff's automobile. In the motion to dismiss, the Police Department argues that even if it refuses to return the automobile to plaintiff's mother, the refusal is not a constitutional violation. The movant correctly indicates that in a motion to dismiss, the plaintiff's allegations must be taken as true. And in the present motion, it is assumed that as a matter of policy, the Police Department refused to return the automobile to plaintiff's mother despite the request by plaintiff.[6]

---

1. It should be noted that the return of the automobile is plaintiff's sole request for relief. This distinguishes the instant case from the garden variety pro se prisoner actions where money damages are sought.

2. *See* the search warrant issued by Judge Shaker attached to the memorandum of law in support of defendant's motion to dismiss filed June 23, 1981.

3. Arguably, the search warrant authorized the seizure of plaintiff's automobile. But since the defendants seem to concede that the automobile was seized under the plain view doctrine, this court will assume that the search warrant did not provide for the seizure of the automobile.

4. As a rule, prisoner petitions are liberally construed. *See e.g., Duncan v. Duckworth*, 644 F.2d 653, 655 (C.A. 7, 1981); *Wright v. El Paso County Jail*, 642 F.2d 134, 135 (C.A. 5, 1981). *See generally* 70 *Georgetown Law Journal* 819 (1981).

5. As will be developed, the two legal issues are: (1) the constitutionality of the search and sei-

zure of plaintiff's automobile; and (2) the due process clause validity of the Police Department's retention of the automobile. But can it also be said that there is a "taking" issue in this case? Has the Police Department violated the Constitution by "taking" plaintiff's property without just compensation? This Court thinks not. A "taking" claim is directed toward a permanent deprivation of property. The permanence element is however missing in the case at bar. Therefore, procedural due process, rather than "taking", is the appropriate theory.

6. Actually, since defendants have introduced post pleading materials, this is more of a summary judgment motion than a motion to dismiss. *See* Wright & Miller, *Federal Practice and Procedure*, § 1336. Nevertheless, even in a summary judgment motion, the adverse party is given the strong benefit of the doubt as to contested facts. *See id.* at § 2727. In any event, it is quite clear that in this motion the court must assume plaintiff's version of the facts with respect to the Police Department's retention of plaintiff's automobile.

Plaintiff contends that the retention of the automobile violated his constitutional rights. And indeed, this Court finds that arguably plaintiff has been deprived of his property without due process of law in violation of the due process clause of the Fourteenth Amendment. In the latter part of this opinion, the Court will decide whether the arguable procedural due process theory can withstand defendant's motion to dismiss.[7]

## II LEGAL ANALYSIS
### SEARCH AND SEIZURE ISSUE

■ The search of the automobile appears to be well within the permissible scope of the Fourth Amendment. As was indicated earlier, the search was carried out pursuant to a duly-issued search warrant; furthermore, this Court notes that the warrant and supporting affidavit are drawn with admirable clarity and precision.

Plaintiff asserts that the search was unconstitutional because it occurred on property belonging to his mother, located at 209 West Dartmouth, in the City of Flint. This is a groundless argument. The warrant clearly indicated that the police had the right to enter the property located at the said address in order to search plaintiff's automobile. Such a warrant obviates the lack of consent of plaintiff's mother.

Similarly, the seizure of the automobile was perfectly valid under the plain view exception to the Fourth Amendment. In the recent case of *Washington v. Chrisman*,[8] the Supreme Court again enunciated the plain view standard. As the Court pointed out, a law enforcement officer may seize incriminating evidence that is discovered in a place where the officer has the right to be.[9]

In the instant case, Sergeant Ignash had the right to be inside the automobile. Therein, he noticed incriminating evidence affixed to the deck lid of the automobile. Under the circumstances, this observation entitled Sergeant Ignash to seize the automobile and did not—in any respect—violate the Fourth Amendment.

As it pertains to plaintiff's Fourth Amendment claim, defendants' motion to dismiss must be granted. Furthermore, it is clear that the complaint against Sergeant Ignash is based on the existence of a Fourth Amendment claim. Therefore, plaintiff's action against defendant Ignash must be dismissed with prejudice.

### PROCEDURAL DUE PROCESS ISSUE

In its brief, the Flint Police Department asserts that even if it ignores plaintiff's request and retains plaintiff's automobile, the Department's conduct would not amount to a "constitutional violation."[10] Without citing any authority for this proposition, defendant moves on to an analysis of a search and seizure issue.[11]

If a person automatically lost all constitutional rights upon entry into prison, this Court would accept the Police Department's briefly stated premise. But since prisoners indeed do retain at least some constitutional rights,[12] this Court must engage in an analysis of plaintiff's procedural due process claim.

In the present case, the pertinent portion of the due process clause protects against the deprivation of property without due process of law. In many procedural due process cases, an important issue is whether the plaintiff has been deprived of "proper-

7. *See* nn. 10–20 and accompanying text *infra.*

8. —— U.S. ——, 102 S.Ct. 812, 70 L.Ed.2d 778 (1982).

9. *See Id.* at ——, 102 S.Ct. at 818. *See also Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

10. *See* the memorandum of law in support of the motion to dismiss filed June 23, 1981.

11. *See Id.*

12. *See Bell v. Wolfish*, 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979); *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977). For a discussion of the policy reasons arguing in favor of recognizing constitutional rights for prisoners, *see* Whitman, *Constitutional Torts*, 79 *Michigan Law Review* 5, 68 (1980).

ty."[13]  Here, however, the automobile doubtless was plaintiff's "property." Moreover, it would appear at first glance that the state failed to accord plaintiff any procedure—let alone due process—in connection with the retention of the automobile.

The literal application of the due process clause to the facts at hand indeed would seem to establish that plaintiff's constitutional right to procedural due process has been violated. Nevertheless, before a federal district court can make such a finding, the recent Supreme Court case of *Parratt v. Taylor*[14] must carefully be considered.

In *Parratt*, the Court made a ruling that significantly cuts back the range of procedural due process claims under section 1983. *Parratt* involved the negligent loss by prison administrators of a twenty-three dollar hobby kit that had been ordered by a state prisoner. The Court, speaking through Justice Rehnquist, held that under the circumstances, the loss of the hobby kit did not raise a procedural due process claim.[15]  According to Justice Rehnquist, due process

had not been denied because the prisoner was left with an available avenue of redress in the form of state tort law. That the prisoner could have brought a state tort action was sufficient procedure to satisfy the demands of the due process clause.[16]

It must be noted that the Court took care to indicate that *Parratt* was a case of misconduct by a state official rather than "a challenge to an established state procedure as lacking in due process."[17]  And this is a crucial distinction. Read in the proper light, *Parratt* reflects a concern that section 1983 has become a constitutional catch-all for a grab bag of tort violations that happen to be committed under color of state law. This concern, so forcibly articulated by Justice Rehnquist in his famous *Paul v. Davis* opinion,[18] has, with the *Parratt* decision, led to a form of an exhaustion doctrine with respect to the torts of state actors.

There can be no gainsaying that the *Parratt* doctrine has weakened the once awesome power of section 1983 as a federal remedy.[19]  Nevertheless, *Parratt* hardly

---

13.  *See e.g., Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). *See also* this Court's discussion of the property concept in *Dorsten v. Lapeer County General Hospital*, 521 F.Supp. 944 (E.D.Mich., 1981).

14.  451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

15.  *Id* at 543, 101 S.Ct. at 1917.

16.  *Id.* at 537–43, 101 S.Ct. at 1913–17.

17.  *Id.* at 539, 101 S.Ct. at 1915 (quoting *Bonner v. Coughlin*, 517 F.2d 1311 (C.A. 7, 1975).

18.  In *Paul*, Justice Rehnquist cautioned against making the Fourteenth Amendment "a font of tort law to be superimposed upon whatever systems may already be administered by the states." *See Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). For a criticism of the *Paul* opinion, *see* Whitman, *supra* n.12.

19.  *Parratt* is not the only recent decision cutting back on the effective range of section 1983. Examples of other such decisions include *Hays v. Jefferson County et al.*, 668 F.2d 869 (C.A. 6, 1982) (Sixth Circuit opinion significantly restricting police supervisor respondeat superior liability under section 1983); *Johnson v. Gran-*

*holm*, 662 F.2d 449 (C.A. 6, 1981) (Sixth Circuit opinion expanding the range of common law immunities under section 1983); *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1981) (Sixth Circuit opinion recognizing Fourth Amendment collateral estoppel in section 1983 actions).

This trend is strengthening state judicial power at the expense of federal judicial power. And there is room for doubt about whether the section 1983 drafters believed that state courts—especially lower state courts—can evaluate claims against state governments with the same impartiality as the federal judiciary. *See generally* Whitman, *supra* n.12.

Indeed, the recent trend will have marked practical implications on constitutional litigation. *See*, Sedler, *The Dombrowski-Type Suit As An Effective Weapon for Social Change: Reflections From Without and Within*, 18 *Kansas Law Review* 237, 254–255 (1970). And if certain commentators are correct in asserting that active judicial review in human rights cases is a cornerstone of American government, the trend also will have great theoretical implications. *See* Perry, *Noninterpretive Review in Human Rights Cases: A Functional Justification*, 56 *N.Y.U. Law Review*, 278, 326–352 (1981); Grey, *Do We Have An Unwritten Constitution?* 27 *Stanford Law Review* 703 (1975). *But see* R. Berger, *Government by Judiciary* (1977); Bork, *Neutral Principles and*

renders the section 1983 procedural due process claim obsolete. The procedural due process theory still can be applied where a *policy* of a state or municipal government entity deprives a person of life, liberty or property without due process of law.

In the present case, defendant Police Department has—in effect—asked this Court to hold that a policy of not returning seized property is not violative of procedural due process. This Court cannot grant the Police Department's request. The evidentiary use of the automobile has long since expired; but plaintiff is still without his property. And this deprivation of property has occurred without a hearing or any other semblance of due process. This is the conclusion that must be reached taking the facts in the light most favorable to plaintiff.

Under this factual scenario, *Parratt* is the only barrier to a procedural due process claim. But, as the above analysis has demonstrated,[20] *Parratt* is not applicable to the instant case. Therefore, plaintiff has stated a claim under the procedural component of the Fourteenth Amendment's due process clause. Accordingly, this Court must DENY the motion to dismiss as it pertains to the Flint Police Department. Unlike Sergeant Ignash, the Police Department must remain as a defendant in this lawsuit.

### III  CONCLUSION AND ORDER

This opinion has analyzed the pending motion to dismiss. For the reasons indicated, the said motion is GRANTED as it pertains to the claim against Sergeant Ignash, and DENIED as it pertains to the claim against the Flint Police Department.

IT IS SO ORDERED.

*Some First Amendment Problems*, 47 *Indiana Law Journal* 1 (1971).

20.  *See* nn. 10–19 and accompanying text *supra.*